[Crim. No. 477.  Second Appellate District.—May 17, 1916.]

THE PEOPLE, Respondent, v. E. L. WILKISON, Appellant.

CRIMINAL LAW—SETTING FIRE TO PILE OF BALED HAY—EVIDENCE— VOLUNTARY CHARACTER OF CONFESSION.—In a prosecution for the crime of having set fire to a pile of baled hay, an admission of guilt made by the defendant to the officer who arrested him, is not involuntary, because of the declaration made by the officer to him to tell the truth, after the defendant had so declared his intention.

ID.—SUFFICIENCY OF PROOF OF CORPUS DELICTI.—In such a prosecution the *corpus delicti* is sufficiently proven by the testimony of the officer who found the hay burning in his description of the conditions as he discovered them and of the character of the hay, together with its situation in an open lot, showing the fire was of incendiary origin.

ID.—PLEAS OF ONCE IN JEOPARDY AND FORMER ACQUITTAL—INSTRUCTION—DIRECTION TO FIND FOR PEOPLE UPON PLEA OF ONCE IN JEOPARDY—FAILURE TO FIND ON PLEA OF FORMER ACQUITTAL—EVIDENCE—LACK OF PREJUDICE.—Where in such a prosecution the defendant in addition to his plea of not guilty interposed a plea of once in jeopardy, and of former acquittal, based upon the ground of variance between the charge and the proof in the first prosecution, there is no error in directing the jury that it should find for the people on the plea of once in jeopardy, nor is the defendant prejudiced by the omission of the jury to find on the plea of former

acquittal, as the finding upon the former plea under the testimony relied upon in support of both pleas, necessarily included an adverse finding upon the plea of previous acquittal.

ID.—EVIDENCE — SETTING OF SUBSEQUENT FIRES—ERROR NOT PREJU-DICIAL.—It is error to admit proof of the setting of a number of fires by the defendant after the fire in question, and upon the same night, but it is not sufficiently erroneous, where it appears from the whole evidence that the conviction of the defendant was justified.

ID.—INSTRUCTION—MALICE.—In such a prosecution there is no error in giving to the jury the definition of malice as the same is found in subdivision 4 of section 7 of the Penal Code.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial. J. W. Curtis, Judge.

The facts are stated in the opinion of the court.

Robt. M. McHargue, and Frank T. Bates, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was charged with having set fire to a pile of baled hay which was owned by a corporation. His conviction followed, after which a motion for a new trial was made. The appeal is taken from a judgment of imprisonment, and also from the order denying the motion for a new trial.

The section under which defendant was prosecuted provides in part as follows (Pen. Code, sec. 600) : "Every person who willfully and maliciously burns any . . . stack of hay or grain or straw of any kind, or any pile of baled hay or straw, . . . not the property of such person, is punishable, . . . " etc. One Warrick, who it is claimed participated with the defendant in the commission of the offense, testified at the trial. He testified that on the day preceding the night when the burning occurred, he and the defendant had been drinking liquor, and that by the time evening came both of them were considerably intoxicated; that this defendant proposed that they burn the pile of hay, which belonged to the Chino Land and Water Company, saying that he, the defendant, had a grudge against that company because they had "beaten him out of some money" at a time previous; that

the two went to the hay-pile; that each of them lighted a match and set fire to the hay; that on their return they stopped at the house of one Andrews, and there statements were made as to what they had been doing, and that the defendant repeated to Andrews his statement that he had a grudge against the corporation mentioned; that they then proceeded to other places, barns, etc., and set some four or five more fires that night. Andrews testified in corroboration of the statement made by Warrick as to the conversation had at his house, and as to the statement made by the defendant that they had set fire to the hay because defendant had a grudge against the Chino corporation. Another witness, an officer, testified to the fact that he found the hay burning and that there was no other fire about the stack, which he said was located some two hundred yards away from the railroad track; that the stack was in an open field. This witness also testified that he knew the hay to be that of the Chino Land and Water Company because he had known of its being hauled there for that company, and that he had just had negotiations with the company's manager for the purchase of some of the hay. The peace officer testified that at the time he arrested this defendant he found him at his mother's place in Chino, and that the defendant made certain statements to him without any promise of reward, or any threat being made, or any inducement of any kind being held out to him. This officer testified that the defendant said "he and Warrick started the fire." The question was then asked the witness: "What fires were you talking of to him when he made the statement? A. The Chino Land & Water Company's hay pile and Mr. Newman's barn and Mr. Snyder's place and Mr. Bickmore's place and Mr. Eckhart's place." This officer on cross-examination said that he asked the defendant what he knew about the fires in Chino, and that the defendant replied, "I don't know anything about them." The witness then said: "That was his first statement, and I looked at him and I saw his hands and limbs all atremble; his hands and limbs were all shaky; and he said, 'I will come out and tell you the truth about it,' and I said, 'It is always best to tell the truth,' and then he told me him and Warrick set the fires." It is insisted that the testimony of the alleged confession of the defendant was improperly admitted over the objection on the ground that the

same was not voluntary. The officer stated that he made no promises nor threats to induce the statement, and his testimony, both direct and on cross-examination, discloses no improper influence having been brought to bear to produce the incriminating admission. The mere statement of the officer, after the defendant's declaration that he would come out and tell the truth, that it was always best to tell the truth, cannot be classed as having an improper influence for the reason that the defendant, according to the officer's testimony, had already made up his mind to declare the truth.

It is further claimed that there was no sufficient proof of the *corpus delicti*, except as it was furnished by the words of the accomplice, Warrick. The *corpus delicti* may always be shown by proof of circumstances. The officer who found the hay burning, and described to the jury the conditions as he discovered them, and gave a description of the character of the pile of hay, together with its situation in an open lot, furnished ample evidence from which the jury could properly conclude that the fire was of incendiary origin. The testimony of this accomplice, together with the express admission of the defendant, furnished abundant proof upon which to base a verdict of guilty. The defendant testified as a witness on his own behalf, and while he denied active participation in the setting of the fire, admitted that he went to the pile of hay with Warrick. He admitted further being present at Andrews' house, but sought to shift the responsibility for the remark as to the grudge against the Chino company from himself to Warrick. A case was so plainly made out against the defendant upon the whole testimony, as we view it, that it would be almost inconceivable that the jury could have decided otherwise upon the proof presented. That consideration will be borne in mind when certain other objections urged by the appellant are considered.

It appears that two trials were had of this defendant: The information in the first case charged that he burned a "stack of hay." At the conclusion of the testimony, it having been shown that the hay burned was a pile of baled hay, the court directed the jury to find a verdict for the defendant on the ground of variance between the charge and the proof. The defendant had asked that the case be dismissed on the same ground. The second information was then filed, upon which this trial was had, wherein the defendant was charged

with having burned "a pile of baled hay." To this second charge, in addition to his plea of not guilty, defendant interposed a plea of once in jeopardy and of former acquittal, basing both pleas upon evidence of the acquittal made because of the variance mentioned. The jury in the case was advised by the court that it should find for the people on the plea of once in jeopardy, but no verdict was returned on the plea of former acquittal. Appellant insists here that, not only was the court in error in directing the jury to find for the people on the plea of former jeopardy, but that he was entitled to a verdict on the plea of former acquittal, and that no jurisdiction resided in the court to pronounce judgment until such a verdict had been rendered. It should be remembered that the evidence offered in support of the plea of once in jeopardy and that of former acquittal was the same, to wit, the record of the proceedings had in the first trial. While it is true in general that a plea of once in jeopardy presents a question of fact which the jury has the right to solve, where the evidence is uncontradicted and shows a state of the case such as that disclosed here, the question becomes more particularly one of law upon which the court is authorized to advise the jury directly. (*People* v. *Cummings,* 123 Cal. 269, [55 Pac. 898]; *People* v. *Ammerman,* 118 Cal. 23, [56 Pac. 15].) And we think that where the jury made its finding upon a plea of not guilty and once in jeopardy, the judgment is not rendered invalid because of the failure to find particularly upon the plea of former acquittal. As has been mentioned, precisely the same facts were relied upon to support the latter plea as were relied upon to sustain the plea of jeopardy. If the defendant had been formerly acquitted, he would also have been in jeopardy. The finding of the jury under the facts here disclosed, upon the plea of once in jeopardy, necessarily included an adverse finding upon the plea of previous acquittal.

The defendant has complained that the court had no right in the first trial to give a mandatory instruction directing his acquittal, but the sole argument in support of this objection seems to be that the court should have advised but not "directed" such a verdict. We think that the defendant is not in a position to raise this objection, as the action of the court was favorable to him, rather than the contrary. The fact that he was at that time insisting upon his motion

to dismiss the case, does not, we think, add any force to the position which he now takes regarding that matter. Cases have been reversed where the appeal was taken by the people from an instruction directing a verdict, but we have yet to find one where the defendant has claimed to have suffered prejudice for like cause. The court under the state of the case at the first trial was altogether justified in refusing to dismiss the charge, and would have been justified in refusing to "advise" the jury to acquit, without it appearing that such acquittal was by reason of the variance between the proof and the charge, which acquittal, under section 1021 of the Penal Code, constitutes no bar to a further prosecution.

The court in instructing the jury stated the definition of the word "malice" as the same is found in subdivision 4 of section 7 of the Penal Code, as follows: "The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." The court gave a further instruction to the jury in which the jury was advised that it was necessary for the prosecution to prove malice, as it was one of the material elements of the offense, and stated: "And in this connection, you are instructed that malice is not presumed, and you cannot presume that any act of the defendant was malicious, but the malice on the part of the defendant must be established by the prosecution as one of the material elements of the offense, and you must be satisfied that the acts of the defendant were malicious to the same extent that you must be satisfied with any other material element of this offense." The appellant insists that the malice mentioned in section 600 of the Penal Code is a particular malice which becomes as of the intent with which the crime is committed, and is not such malice as is defined by subdivision 4 of section 7 above quoted. The code definition of malice is applicable in all cases where the word "malicious" is used in the code as the part of the definition of an offense. It is only in cases where in the description of the offense some qualification is made as to the meaning of that term or as to the proof thereof, that a defendant has a right to further instruction upon that subject. We find in the case of *People* v. *Dice,* 120 Cal. 189, [52 Pac. 477], where the charge was murder, that the supreme court sustained the giving of an instruction which declared the definition of malice

in the terms first stated above. In that case the further instruction was given as to express and implied malice agreeable to the special provisions of the section which immediately follows that defining the crime of murder. (See, also, *People* v. *Taylor*, 36 Cal. 255; *People* v. *Myring*, 144 Cal. 351, [77 Pac. 975]; *People* v. *Ah Toon*, 68 Cal. 362, [9 Pac. 311]; *Davis* v. *Pacific Telephone etc. Co.*, 127 Cal. 312, [59 Pac. 698].)

It is further claimed that the court erred in allowing proof to be made of the fact that a number of fires were set by Warrick and the defendant after the pile of baled hay was kindled and on the same night. Conceding that proof of after-committed offenses is not admissible in support of a criminal charge, we feel wholly justified in this case in resolving the error against the defendant for the reason that upon the whole case we think that the conviction was just, and that there has been no miscarriage of justice. The chief points relied upon by the appellant have now been considered. The instructions of the court were quite complete and seem to have fully stated the law applicable to the case.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.