## RIPPY et al. v. COMMONWEALTH.

Court of Appeals of Kentucky.

Oct. 10, 1952.

Roy L. Steers, Franklin, for appellants.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Chief Justice.

Kelly and William Rippy were convicted on a charge of arson and sentenced to two years in prison. On this appeal the Rippys are urging (1) the verdict is against the evidence; (2) the trial court erred in permitting the Commonwealth to impeach one of its witnesses; (3) the Commonwealth's Attorney was permitted to lead a witness; (4) venue was not proven; and (5) misconduct on the part of the Commonwealth's Attorney.

During the night of June 19, 1950, a four-room residence and outbuildings on a farm being occupied by Mr. and Mrs. Robert Crossfield, near New Roe in Allen County, were destroyed by fire. The Crossfields were away from home the night the house burned and knew nothing of the fire until their return late Tuesday morning. The chief witness for the Commonwealth was Mrs. Nubie Gaddis, who lived in Westmoreland, Tennessee, approximately 15 miles from New Roe. She said the Rippys came to her home in a truck to visit her husband early in the evening of June 19th. When they left they took her with them. They stopped at a filling station in Westmoreland and got some sandwiches. As they rode around the country they were drinking beer. Later in the night the Rippys stopped their truck in front of a dark-

ened two-story house. When they found no one at home the Rippys broke out some of the windows and went in the house. They carried out some bedclothes and, after lighting them with a match, pushed them back into the house. The Rippys then took the witness home. She did not recognize the neighborhood or the house and did not see whether the bedclothes were burning when they left the house. An employee of a service station in Westmoreland said he saw the Rippys with Mrs. Gaddis in a truck at his place of business early Monday evening. Tire marks in the Crossfield yard showed a peculiar imprint which matched a mark on one of the tires on the Rippy truck.

The defense of the Rippys was an alibi. They denied being in Westmoreland on the night in question, saying that they had spent the night with their sister and her husband, near New Roe. The testimony of those witnesses supported that of the Rippys. However, the brother-in-law said he did not know at what time the Rippys reached his home Monday night. The Rippys denied knowing Mrs. Gaddis or the filling station attendant. Their explanation of the tire marks was that on the previous Saturday they had visited the Crossfield home to get a plow and that Robert Crossfield had helped them load it on the truck. Mrs. Crossfield said the Rippys had been at her home on the previous Saturday, but that Mr. Crossfield was not there. Mr. Crossfield said he was not at home on Saturday and had never helped the Rippys load a plow on their truck.

■ No motive was shown for the crime, but we can not escape the conclusion that there was sufficient evidence to warrant the submission of the case to the jury. Mrs. Gaddis' testimony timely placed the Rippys at a dwelling like the one which burned. Likewise, she described acts on the part of the Rippys which connected them directly with the burning of a dwelling. The testimony of the filling station attendant placed Mrs. Gaddis with the Rippys on Monday night. And it is beyond dispute that the Rippy truck had been in the yard of the Crossfield home. Of course, there is conflicting testimony as to the time it was there.

■ The complaint as to the attempt on the part of the Commonwealth to impeach its witness goes to the testimony of Mrs. Gaddis. On re-direct examination she was asked whether the Rippys bought gasoline at the filling station in Westmoreland and she said she did not know whether they did or not. Later, during the re-direct examination, she was asked whether she had not made a previous statement to the effect that the party had gone to New Roe, which place she recognized, and there bought gasoline. There was an objection to the question, but no ruling made thereon. Furthermore, it was not answered. Under the circumstances, we fail to see any basis for this alleged error.

■ The complaint as to the leading questions is directed to the evidence of the service station attendant concerning the identity of William Bud Rippy. The witness was asked by the Commonwealth's Attorney if he meant Red Rippy. It developed that William Bud Rippy was known as Red. We fail to see how this testimony was prejudicial to the substantial rights of the Rippys.

■ Likewise, there is no basis for the complaint of failure to prove venue. A deputy sheriff testified that the Crossfield home was in Allen County. His testimony was neither contradicted nor denied.

■ Lastly it is contended that the Commonwealth's Attorney was guilty of misconduct in referring to one of the appellants as a convicted felon. On the trial Kelly Rippy was asked if he had been convicted of a felony and he answered affirmatively. The jury was properly admonished by the trial judge when that answer was given. There was no further reference to Kelly Rippy's previous conviction. Furthermore, the argument of the Commonwealth's Attorney was not taken down by a reporter and was not in the Bill of Exceptions. Therefore, the question can not be raised for the first time here.

Judgment affirmed.