[Crim. No. 5919. Second Dist., Div. Three. Feb. 17, 1958.]

THE PEOPLE, Respondent, v. DON KENNETH WOODS et al., Defendants; BRUCE THOMAS SMITH, Appellant.

618

Gladys Towles Root, Eugene V. McPherson and Joseph A. Armstrong for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendants Smith and Woods were convicted, in a jury trial, of the crime of malicious burning of personal property in violation of section 449a of the Penal Code in that they maliciously set fire to vegetable crates which were of a value in excess of $25 and were the property of Safeway Stores, Inc. Smith admitted an allegation of the information that he had been convicted of robbery. Smith appeals from the judgment.

Appellant contends that there was no competent evidence of the value of the personal property burned; that the court erred in sustaining an objection to a question asked by appellant regarding intoxication of appellant; and that the evidence was insufficient to support the verdict.

On June 8, 1956, approximately 318 boxes, crates, and cases of various kinds (such as apple boxes, cantaloupe crates, and milk cases) were in an alley at the rear of a Safeway store in Lancaster, and they were stacked in rows against the rear brick wall of the store. The stack was about 25 feet long, 7 feet wide, and 7 feet high.

On said June 8, and prior thereto, there was an excavation in the alley at a place about 100 feet from the rear of the store. Flarepots, which produce light by burning oil or kerosene through a wick, had been placed around the excavation.

In the evening of June 8, the defendants Smith and Woods, and other men by the names of Bakman, Meyers, and Zink, attended a motion picture theater in Lancaster. About 11:30 p. m. they left the theater, entered Bakman's automobile and rode around for awhile in Lancaster. Then Bakman, who was driving the automobile, stopped the automobile behind the theater at a place about 300 feet from the Safeway store.

Bakman, called as a witness by the People, testified that when the automobile stopped behind the theater the defendants Smith and Woods said they were going to get out of the automobile and go to the bathroom; then Smith and Woods got out of the automobile and walked toward the Safeway store; he (witness) saw Woods pick up a lighted flarepot, which was near the excavation, and throw or drop it in the general area of the Safeway store; then Smith and Woods trotted back to the automobile; before they arrived at the automobile, he (witness) saw a fire blaze "all at once" in back of the store where the flarepot had been thrown or dropped; when they entered the automobile he (witness) drove away.

About 12:30 a.m. on June 9, firemen from the fire department in Lancaster went to the rear of the Safeway store and found that the stack of boxes behind the store was in flames. The firemen extinguished the fire, but the boxes were practically a total loss. The bricks in the rear wall of the store were so deteriorated by the fire that touching the bricks would cause the surface of the bricks to fall off. A flarepot was found in the ashes in the center of the burned area about 6 feet from the store, and another flarepot was found in the ashes about 6 feet west of the other flarepot and about 12 feet from the building. Those flarepots were similar to the flarepots which were around the excavation. The fire department captain was of the opinion that the fire was of incendiary origin.

A deputy sheriff, called as a witness by the People, testified that he was an investigating officer in this case; he had a conversation with Woods on June 10 about 1 p. m. wherein Woods said, among other things, that he had thrown a flare into the boxes. The deputy testified further that shortly after that conversation he had a conversation with Smith wherein the deputy said that he was investigating the fire that occurred at the Safeway store, and he had information that Smith had thrown a flare "with Kenny Woods"; that Smith said he had been drinking and he did not remember anything and he

did not remember at all that he had thrown it; the deputy asked Smith if he could have thrown a flare; Smith replied, "I guess I could have but I don't remember. I don't remember a thing about that."

Defendant Woods testified that at times while he, Smith, Bakman, Meyers and Zink were in the theater, all of them except Bakman drank some whisky from a bottle; after leaving the theater, they drove around town, went to a drive-in restaurant, and later stopped in the vicinity of the Safeway store; he (Woods) walked to the excavation and picked up a burning flarepot; some coal oil dropped on his hand and burned him; then he dropped the flarepot and the fire started fast; he became scared and went back to the automobile; he did not pick up any other flarepot at that time. On cross-examination he said that the deputy sheriff told him that he (deputy) had information as to who had thrown the other flarepot; he (Woods) replied to the effect that he was not going to tell; he did not know that anyone was "out of the car" with him; he did not drop the flarepot as soon as he picked it up, but he was carrying it and trying to take it to the car when he dropped it; he carried it 30 or 40 feet, going in a direction toward the back of the store; the car was in the opposite direction; he "was just going to go around back into the car"; he did not see Smith until he (Woods) returned to the car; when he returned there he saw Smith standing outside the car near the car door.

Defendant Smith did not testify.

▪ Appellant contends that there was no competent evidence that the value of the personal property burned was in excess of $25. Section 449a of the Penal Code provides: "Any person who willfully and maliciously sets fire to or burns . . . or who aids . . . the burning of . . . any pile of planks, boards . . . or other lumber . . . or any other personal property not herein specifically named; (such property being of the value of twenty-five dollars and the property of another person) shall . . . be sentenced . . . ." Mr. Moulds, a produce clerk at the Safeway store in Lancaster, testified that on the night of June 8 he stacked the crates back of the store; he counted them and made an entry of the number of each kind on a tally form; there were 12 orange boxes, 52 lugs, 6 corn crates, 16 cantaloupe crates, 2 avocado flats, 30 apple boxes, 54 potato crates, 16 egg crates, and 104 milk cases. He testified that he wrote on the tally sheet or memorandum the number of each kind of article and the total evaluation of the articles; the

price of each kind of article listed on the memorandum was printed thereon by the Safeway store; the memorandum was kept by the Safeway store in the course of business. When the witness was asked the reasonable value of the articles which were burned, Smith objected to the question upon the grounds that the witness was not qualified to give such opinion, and the memorandum regarding prices was hearsay. The objection was overruled. The witness answered that the value was $326.44. Appellant asserts on appeal that the testimony as to value was incompetent for the reasons stated in his objection in the trial court, and also for the reasons that the value stated by the witness was not the "market value," that a proper foundation had not been shown, and that the witness was not a "custodian or other qualified witness" such as is referred to in section 1953f of the Code of Civil Procedure. That section provides: "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." The trial judge determined, upon proper evidence, that the sources of information, method and time of preparation of the memorandum were such as to constitute a sufficient foundation for the evidence. The tally sheet, showing printed prices of various kinds of boxes, crates and cases, was a printed form that was made by the Safeway store in the regular course of its business. The witness, in the regular course of his duties as produce clerk at the store, stacked and counted the boxes, crates and cases and he wrote on the tally sheet the number of each kind of article and the total evaluation of the articles listed (computed upon the printed prices). The court did not err in receiving the evidence as to value.

Appellant contends that the court erred in sustaining an objection to a question regarding intoxication of appellant. During the cross-examination of Bakman, appellant asked him if he had formed any conclusion as to whether appellant was intoxicated. The deputy district attorney objected to the question on the ground that it was immaterial in that the offense charged was not one where specific intent is a necessary element. The objection was sustained. Appellant argues that specific intent is a necessary element of the alleged offense,

since section 449a of the Penal Code, allegedly violated, applies to a person who "maliciously" sets fire to personal property. Section 22 of the Penal Code provides: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act." In *People* v. *Wilkison*, 30 Cal.App. 473 [158 P. 1067], it was charged that the defendant set fire to a pile of baled hay in violation of section 600 of the Penal Code, which section provided: "Every person who willfully and maliciously burns any . . . stack of hay . . . not the property of such person, is punishable . . . ." A person, who participated with the defendant in that alleged offense, testified that he and that defendant had been drinking liquor and they were intoxicated. In that case (p. 478) the court instructed the jury that the words "malice" and "maliciously" import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law. The definition of those words as stated in that instruction is found in section 7, subdivision 4, of the Penal Code. In that case the court said (p. 478) : "The appellant insists that the malice mentioned in section 600 of the Penal Code is a particular malice which becomes as of the intent with which the crime is committed, and is not such malice as is defined by subdivision 4 of section 7 above quoted. The code definition of malice is applicable in all cases where the word 'malicious' is used in the code as the part of the definition of an offense. It is only in cases where in the description of the offense some qualification is made as to the meaning of that term or as to the proof thereof, that a defendant has a right to further instruction upon that subject." In Burdick, Law of Crime, volume 3, it is said at page 7: "The words 'wilfully and maliciously' import the state of mind which, at common law, is a necessary element of arson, but they do not import any specific intent to destroy or burn a particular building, and, at common law, no such specific intent is required, nor any grudge or personal ill will towards the owner of the property. The general criminal intent to burn some building, or general malice, regardless of any specific intent, is all that is required." Voluntary intoxica-

tion would not be a defense to the charge herein. The court did not err in sustaining the objection.

■ Appellant also contends that the evidence was insufficient to support the judgment. His argument is that there is nothing to connect him with the crime; that there was no proof that he threw a flare, or that he encouraged or aided anyone in throwing a flare; and that since the prosecution presented testimony that appellant said that he did not remember anything about the fire, the prosecution is bound by that statement of appellant in the absence of evidence to the contrary. There was evidence that appellant and Woods got out of Bakman's automobile and walked toward the Safeway store, that Woods picked up a lighted flarepot, carried it about 40 feet, and threw it into the stack of boxes; after Woods threw a flarepot the fire started fast and there was a blaze "all at once"; then appellant and Woods trotted back to the automobile; Woods threw only one flarepot; there were two flarepots in the ashes; and the fire was of incendiary origin. Appellant did not testify. The fact that appellant told the deputy sheriff, on the day after the fire, that appellant did not remember anything about the fire was not determinative of the question whether appellant was a participant in starting the fire. The statement by appellant that he did not remember was not determinative that he in fact did not remember, but such statement, in view of the fact it was presented by the prosecution and was uncontradicted, was a circumstance indicating that appellant was not in a position to explain or deny the evidence presented against him. Except for that statement by appellant, the circumstances were such that it could reasonably be expected that defendant would testify and explain or deny the evidence presented against him, particularly his presence at the scene of the fire at the time the fire was started, and the evidence that he hurried back to the automobile when the fire started. Irrespective of the failure of appellant to testify the jury could reasonably infer from the circumstances that appellant was a participant in setting fire to and burning the boxes. The evidence was sufficient to support the judgment.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.