999 P.2d 251

**William G. ROELL, Plaintiff–Appellant,**

v.

**BOISE CITY, a municipal corporation, and Scott Brown, an employee of Boise City, Defendants–Respondents.**

No. 25163.

Supreme Court of Idaho,
Boise, February 2000 Term.

April 21, 2000.

Howard Q. Noack, Jr., and Angstman Law, Boise, for appellant. Thomas J. Angstman argued.

Boise City Attorney's Office, Boise, for respondents. Margery W. Smith argued.

SCHROEDER, Justice.

Following remand from this Court in *Roell v. Boise City*, 130 Idaho 199, 938 P.2d 1237 (1997) (*Roell I*), the district court ordered Boise City to pay William Roell (Roell) $604.00, for the conversion of property. Roell appealed the district court's decision. This Court affirms the decision of the district court.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The background of this dispute is summarized in *Roell I*:

William Roell (Roell) owns two lots in Boise, one of which is an open lot located at 414 S. Garden and the other an improved lot at 419 S. Garden. Apparently, Roell spends most of the year in California and the remainder at the house on S. Garden. In 1991, Boise City (City) representatives first cited Roell for violations of various provisions of the Boise City Code, including the zoning code, the housing code, and the litter ordinance. Specifically, the City cited Roell for maintaining outdoor storage, maintaining an automobile wrecking yard, maintaining a junk yard, violating the litter ordinance, parking on unimproved surfaces, and allowing three or more horses on residential property. Roell did nothing. Throughout the following two years, City representatives visited the property at 419 S. Garden more than twenty times, leaving notices of violation and speaking at various times with Roell, Roell's son, and Roell's co-owner. The City additionally obtained Roell's California address and sent notices of the violations to Roell at that address. Roell steadfastly refused to clean up the property and, in fact, did not respond to the City's various notice requests. Because of Roell's failure to respond to the citations, the City authorized a physical clean-up of the property located at 419 S. Garden in February 1993.

Prior to the clean-up, several of the City's enforcement specialists and the contractor hired to perform the clean-up inspected the items in the yard at 419 S. Garden and determined which items were "litter" and "junk" that should be removed and which items should remain. The enforcement specialists instructed the contractor not to remove any titled vehicle, any motorcycles, a cushman scooter, a watercraft, or several lawn mowers. On February 5, 1993, the City notified Roell of the pending clean-up and instructed Roell "to remove or dispose of the offending weeds, grasses, debris, garbage, litter, rubbish or refuse" and further urged Roell "to remove all items of value." Roell again did nothing, and, on April 27, 1993, the contractor removed from Roell's property those items that the City believed to have no value. Specifically, the contractor removed lawn mowers that were in pieces, bike parts, bike tires, a rusty oil barrel, more than sixty automobile tires, various construction materials, and broken tree limbs. All complete mowers and bicycle were left on the property.

Roell subsequently filed this action for trespass and conversion, alleging that the City had no right to enter his property to do the clean-up and that, in doing so, the City wrongfully had taken more than $10,000 of Roell's personal property. The city filed a motion for summary judgment. Despite the fact that there was at least some indication in the record that Roell maintained that the property had value, the district court concluded that the items removed were litter, that the City had authority to remove the litter if Roell refused, and that there was no basis for Roell's trespass and conversion actions.

The Court vacated the district court's grant of summary judgment and remanded the case to the district court for further proceedings. The district court conducted a hearing and ordered the City to pay $604.00 for certain property taken from Roell. Roell filed a motion for reconsideration, alleging that (1) the City had violated his civil rights pursuant to 42 U.S.C. § 1983 and, (2) that he had been deprived of his constitutionally protected due process rights. The district court

denied the motion for reconsideration. Roell appealed to this Court.

## II.

### THE DISTRICT COURT PROPERLY LIMITED ITS CONSIDERATION TO THE ISSUES THAT WERE PLED PRIOR TO TRIAL.

Roell alleges that his due process rights were violated, and it was constitutionally impermissible for the City to take possession of items from his property. He seeks relief pursuant to Article I, § 14 of the Idaho Constitution and the 5th Amendment of the United States Constitution, and he makes claims pursuant to 42 U.S.C. § 1983. However, these claims were not set forth in the pleadings before the district court prior to trial.

The complaint filed prior to *Roell I* alleged trespass and conversion:

> We note that Roell did not present argument that the City did not follow its own ordinances nor that the ordinances, themselves, are defective or unconstitutional. Thus, the only challenge on appeal is that the City did not have authority under the ordinances or state statutes to take the action that it did.

*Roell I* at 201, 938 P.2d 1239.

This Court remanded the case to the district court to determine whether property of value had been taken, and, if so, the amount to which Roell was entitled. No other issue existed at that time.

Roell filed a supplemental complaint following remand that made a claim of a due process violation. However, that complaint was dismissed by the district court. Roell has not appealed that decision. Consequently, the case went to trial on the limited question of whether the City had removed property of value. The claims asserted in the motion for reconsideration were not timely in the district court and, consequently, have not been preserved for appeal. Constitutional issues generally will not be considered if raised for the first time on appeal. *State v. Fox*, 130 Idaho 385, 387, 941 P.2d 357, 359 (1997). Failure to properly raise such an issue below is a waiver of the right to raise the issue on appeal.

## III.

### STANDARD OF REVIEW

Review of the trial court's decision is limited to ascertaining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Conley v. Whittlesey*, 133 Idaho 265, 985 P.2d 1127 (1999). A trial court's findings of fact in a court tried case are liberally construed on appeal in favor of the judgment entered in view of the trial court's role as trier of fact. *Id.* It is the province of the trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *Id.* If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Id.* However, this Court exercises free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. *Id.*

## IV.

### THE DISTRICT COURT'S DECISION AS TO VALUE IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

The district court determined that Roell was entitled to $604.00 in damages for the items taken from his property. The district court concluded:

> The evidence is undisputed that on or about April 27, 1993, Allied Construction came upon the property and removed Roell's personal property located at 419 S. Garden. Both Mr. Taylor of Allied Construction and Mr. Brown indicated that they had gone upon Roell's property prior to the removal of the property. Officer Brown did not testify as to how long he spent on the property and what steps he took to determine whether or not the property had value. Mr. Taylor testified that although he observed lumber stacked on the property and that certain items were under tarps, as far as the actual handling

of the removal of this property, he was not familiar with each item. Mr. Taylor testified that he had laborers that removed these items from Roell's property. No testimony was presented to the Court as to how long this removal process took and what steps were taken to inspect each item of property to determine whether or not the property had value except for the two diesel engines.

Mr. Taylor testified that they did in fact remove two engines from the property, that Allied Construction took the engines back to the shop and determined that the engines had seized. Mr. Taylor's opinion as a lay witness was that the engines no longer had value as scrap or for the installation into a vehicle. Mr. Taylor went on to testify that for the most part the dimensional lumber had been weakened due to the exposure to the elements and therefore was of no value. Mr. Taylor did testify that his company is in the salvage business and that he did not observe any items of personal property taken from Roell's real property that was of value. Mr. Taylor did testify however that he found two toilets on the property but he could not testify as to whether or not those toilets were damaged. Mr. Roell testified that those toilets had value of $52.00 each.

Mr. Roell testified that there were tires and wheels located on his property that had a value of $1,200.00. Mr. Taylor testified that Allied Construction did not take an inventory as to how many tires and wheels were there and that he did not testify as to the condition of the tires and wheels other than they went to a stockpile of tires kept by Allied Construction. Mr. Taylor testified that there is a market for used tires. Mr. Taylor went on to state that Allied Construction picked through the tires and they concluded that the tires and wheel had no value. Mr. Roell testified that these tires and wheels were snow tires and that he used on other vehicles and that they had value.

The Court will conclude from the testimony of the respective witnesses and the photographs, specifically Exhibit "G", that the wheels and tires did have value and that those tires could have been sold or used by Roell as snow tires. The Court, based on the totality of the evidence, will find that those tires and wheels had a fair market value of $500.00.

The remainder of the items set forth in Exhibit "I" were discussed by Mr. Taylor and the Court is satisfied that the remaining items were observed by Mr. Taylor and determined by him to be of no value. The Court is satisfied from the totality of the evidence that Mr. Taylor's testimony in this regard carries greater weight than that of Roell. Thus, the Court will find that the toilets, wheels and tires on the property were property of value and that this personal property had a collective value of $604.00.

Mr. Roell testified in depth that he had plans for the use of many items and that all of these items had value to him. The Court not only relies on the testimony of Mr. Taylor and Mr. Brown, but also the photographs of the property and how it was stored in concluding that, except for the toilets and the tires, the other property did not have value and fell within the definitions of the nuisance statutes of the State of Idaho as well as the Boise City Code.

The findings of the district court are supported by substantial evidence.

### V.

### ATTORNEY FEES

Roell is not entitled to attorney fees because he is not a prevailing party. The City has cited to Idaho Appellate Rule 41 in a claim for attorney fees on appeal but has not cited to a statutory basis for an award. The City's claim for attorney fees is denied.

### VI.

### CONCLUSION

The decision of the district court is affirmed. The City is allowed costs on appeal. No attorney fees are awarded.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL, concur.